UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON REGAN,<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br>INDICTMENT<br><br>18 U.S.C. § 1349<br>18 U.S.C. § 1343<br>18 U.S.C. § 1956(h)<br><br>FORFEITURE |

**THE GRAND JURY CHARGES:**

## INTRODUCTORY ALLEGATIONS

At times relevant to the Indictment:

1. From around June 2007 until around January 2021, the defendant, **JASON REGAN**, worked in Columbus, Ohio, as a Senior Financial Analyst for an international retailer (the "Company").

2. **REGAN's** job responsibilities at the Company included managing department budgets and accounting processes, such as expense tracking and recording, and submitting approved invoices to accounts payable for payment. One of the departments within **REGAN's** job responsibilities was Customer Market Insights, which conducted various marketing activities.

3. Person 1 was a close personal acquaintance of **REGAN**. From around 2011 until around January 2021, Person 1 worked as an independent contractor for Customer Market Insights. Initially, Person 1 principally did data entry for the

Company. Beginning around 2013, Person 1's primary job responsibilities were signing up for or otherwise finding advertisements of the Company's competitors; copying the advertisements, generally through computer screenshots; pasting those copies or screenshots into a designated report format; and electronically submitting the report to a supervisor one or more times each week. Person 1 generally worked from home, not on premises at the Company.

4. English was not Person 1's first language, and Person 1 spoke and wrote English with limited proficiency. **REGAN** frequently translated for Person 1 and spoke and wrote on Person 1's behalf, both during Person 1's work for the Company and in personal matters.

5. With **REGAN's** assistance, Person 1 submitted invoices to the Company. The invoices required approval from Person 1's supervisor ("Supervisor 1") before the Company would pay them.

6. The Company paid the invoices with electronic Automated Clearing House (ACH) payments to Person 1 using a PNC Bank account ending x7248 (the "Company Account").

7. Person 1 received payments from the Company into a JP Morgan Chase Bank ("JPMC") account ending x3554, which was jointly owned by **REGAN** and Person 1 (the "JPMC x3554 Account"). **REGAN** and Person 1 were also joint owners of a JPMC account ending x8431 (the "JPMC x8431 Account").

8. A Simplified Employee Pension Individual Retirement Account (SEP-IRA) in the name of Person 1, with **REGAN** as the sole beneficiary, was held by

2

Morgan Stanley Smith Barney, with account number ending x9394, from on or about October 13, 2017, through at least January 2021 (the "SEP-IRA Account").

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

9. Paragraphs 1 to 8 of this Indictment are realleged here as if fully restated herein.

10. From at least in or around January 2011, through in or around January 2021, in the Southern District of Ohio, the defendant, **JASON REGAN**, and Person 1 knowingly and intentionally conspired and agreed to commit wire fraud; that is, with intent to defraud, to devise and intend to devise and knowingly participate in a scheme to defraud in order to deprive another of money or property by means of materially false and fraudulent pretenses, representations, promises, and material omissions—specifically, submitting false and fraudulent invoices to the Company and causing Supervisor 1 to approve them under fraudulent pretenses—and for the purpose of executing and attempting to execute the scheme, knowingly used and caused another to use wire communications in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy

11. It was part of the conspiracy that **REGAN** worked with Person 1 to cause the Company to pay fraudulent invoices from Person 1.

12. It was further part of the conspiracy that Person 1 did not submit invoices directly to Supervisor 1 by email.

13. It was further part of the conspiracy that **REGAN** and Person 1

3

cultivated a friendly relationship with Supervisor 1, which included giving gifts to Supervisor 1.

14. It was further part of the conspiracy that **REGAN** submitted Person 1's invoices to Supervisor 1 in person. This permitted **REGAN** to control the circumstances in which Supervisor 1 reviewed the invoices, and to take signed invoices away without leaving Supervisor 1 with copies.

15. It was further part of the conspiracy that **REGAN** caused Supervisor 1 to approve Person 1's invoices under false pretenses.

16. It was further part of the conspiracy that **REGAN** presented duplicate or extra invoices from Person 1 to Supervisor 1 purportedly for re-signature, citing bogus reasons, such as that an accounting code needed to be revised.

17. It was further part of the conspiracy that **REGAN** presented Person 1's invoices to Supervisor 1 in circumstances in which Supervisor 1 was unlikely to review them carefully.

18. It was further part of the conspiracy that **REGAN** used his position as Senior Financial Analyst to conceal the extent of the payments to Person 1 and avoid detection of the scheme by Supervisor 1 and others at the Company.

19. It was further part of the conspiracy that Person 1's invoices were ambiguous as to the time periods and services they covered. **REGAN** frequently submitted these invoices to Supervisor 1 at irregular intervals, sometimes in advance of the purported billing period, and sometimes afterward. The ambiguity and irregularity of the invoices made it difficult or impossible for Supervisor 1 to

detect duplication or overlap among them.

20. It was further part of the conspiracy that in or around November 2019, **REGAN** helped Person 1 negotiate a new compensation agreement with Supervisor 1.

21. It was further part of the conspiracy that in 2020, when the COVID pandemic temporarily prevented **REGAN** from presenting Person 1's invoices to Supervisor 1 in person, **REGAN** helped Person 1 email invoices to Supervisor 1 that were generally consistent with the November 2019 compensation agreement.

22. It was further part of the conspiracy that, after Supervisor 1 had approved 2020 invoices submitted by email and the Company had paid Person 1 for these invoices, **REGAN** arranged for in-person meetings with Supervisor 1 outside the office, under the false pretense that Supervisor 1 needed to hand-sign the previously approved and paid invoices.

23. It was further part of the conspiracy that **REGAN** submitted these fraudulent, hand-signed 2020 invoices for payment, which caused the Company to pay Person 1 far more than the November 2019 compensation agreement covered.

24. It was further part of the conspiracy that, in total, **REGAN** and Person 1 caused the Company to pay over $250,000 in average annual compensation to Person 1 from 2011 through 2020, as detailed here:

| Year | Annual Payments to Person 1 |
|---|---|
| 2011 | $42,355 |
| 2012 | $73,700 |
| 2013 | $99,860 |
| 2014 | $202,717 |

5

| | |
|---|---|
| 2015 | $215,378 |
| 2016 | $315,401 |
| 2017 | $324,780 |
| 2018 | $420,676 |
| 2019 | $444,394 |
| 2020 | $415,970 |
| Total: | $2,555,231 |

By comparison, another employee of the Company, who performed work similar to that performed by Person 1, earned annual compensation of approximately $43,000 during a similar period.

**In violation of 18 U.S.C. § 1349.**

## COUNTS TWO TO EIGHT
### (Wire Fraud)

25. Paragraphs 1 to 8 of this Indictment are realleged here as if fully restated herein.

26. From at least in or around January 2011, through in or around January 2021, in the Southern District of Ohio, the defendant, **JASON REGAN**, with intent to defraud, devised, intended to devise, and knowingly participated in a scheme to defraud and to deprive another of money and property by materially false and fraudulent pretenses, representations, promises, and omissions; that is, **REGAN** used his authority and access as a Senior Financial Analyst to cause the Company to pay false and fraudulent invoices to Person 1.

27. On or about the dates set forth below, in the Southern District of Ohio, for the purpose of executing the scheme described above, and attempting to do so, the defendant, **JASON REGAN**, knowingly transmitted and caused to be transmitted by means of a wire communication in interstate commerce, signals and

6

sounds, as follows:

| Count | Approximate Date | Description of Interstate Wire Communication |
|---|---|---|
| Two | 07/22/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $19,500 |
| Three | 08/05/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $47,500 |
| Four | 08/28/2020 | Electronic mail from Person 1's Yahoo account to Supervisor 1's Company account, attaching invoices |
| Five | 09/02/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $19,500 |
| Six | 10/28/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $58,500 |
| Seven | 11/04/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $39,000 |
| Eight | 12/02/2020 | Electronic payment from the Company Account to the JPMC x3554 Account – $19,500 |

**All in violation of Title 18, United States Code, Section 1343.**

## COUNT NINE
### (Conspiracy to Commit Money Laundering)

28. Paragraphs 1 to 8 of this Indictment are realleged here as if fully restated herein.

29. From at least January 2011, through at least January 2021, in the Southern District of Ohio and elsewhere, the defendant, **JASON REGAN**, did knowingly combine, conspire, and agree with Person 1 to commit offenses against the United States in violation of 18 U.S.C. § 1957, that is, to knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity—namely, wire fraud.

7

## Manner and Means of the Conspiracy

30. It was part of the conspiracy that payments on Person 1's fraudulent invoices to the Company were deposited into the JPMC x3554 Account.

31. It was further part of the conspiracy that **REGAN** withdrew sums in excess of $10,000 from the JPMC x3554 Account to pay personal expenses for the benefit of himself and Person 1.

32. It was further part of the conspiracy that **REGAN** withdrew sums in excess of $10,000 from the JPMC x3554 Account to deposit into the JPMC x8431 Account.

33. It was further part of the conspiracy that **REGAN** transferred sums in excess of $10,000 from the JPMC x8431 Account into the SEP-IRA Account.

**In violation of 18 U.S.C. § 1956(h).**

## FORFEITURE ALLEGATION A

34. The allegations contained in this Indictment are incorporated here for the purpose of alleging forfeitures to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

35. Upon conviction of any offense in violation of Title 18, United States Code, Sections 1349 or 1343 as alleged in this Indictment, the defendant, **JASON REGAN**, shall forfeit to the United States, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the violation, including but not limited to:

     a.    The contents of the JPMC x3554 Account; and

     b.    A sum of money which represents the amount of proceeds the defendant obtained as a result of the offense(s).

## FORFEITURE ALLEGATION B

36. The allegations contained in this Indictment are incorporated here for the purpose of alleging forfeitures to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

37. Upon conviction of the offense in violation of Title 18, United States Code, Section 1956(h) as alleged in Count Nine of this Indictment, the defendant, **JASON REGAN**, shall forfeit to the United States, in accordance with Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to:

     a.    The contents of the JPMC x3554 Account; and

     b.    A sum of money which represents the amount of proceeds involved in the offense.

## SUBSTITUTE ASSETS

38. If any of the above-described forfeitable property, as a result of any act or omission of the defendant, **JASON REGAN**:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) or Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant, **JASON REGAN**, up to the value of the forfeitable property including, but not limited to, the contents of the JPMC x8431 Account.

**Forfeiture notice pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

                                                            /s/ **Foreperson**
                                                            **Foreperson**

**KELLY A. NORRIS**
**Acting United States Attorney**

**DAVID J. TWOMBLY (92558)**
**Assistant United States Attorney**